# UNITED STATES DISTRICT COURT
for the
Eastern District of Tennessee

| | |
|---|---|
| United States of America<br>v.<br>Robert Z. Whipple, III<br><br>*Defendant(s)* | )<br>)  Case No. 3:20-MJ-2073<br>)<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __March 5, 6 & 7, 2020,__ in the county of __Knox__ in the __Eastern__ District of __Tennessee__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113(a) | Bank Robbery |

This criminal complaint is based on these facts:

See Affidavit of Special Agent Wesley P. Leatham, Federal Bureau of Investigation, attached hereto and incorporated herein.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Wesley P. Leatham, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 03/09/2020

_____
*Judge's signature*

City and state: Knoxville, Tennessee

H. Bruce Guyton, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

1. I, Wesley P. Leatham, being duly sworn, state the following information to be true to the best of my knowledge, information and belief:

## I. INTRODUCTION

2. This affidavit is made in support of a criminal complaint against Robert Z. Whipple III, identified as a white male, date of birth of January 17, 1973, Social Security Account Number XXX-XX-9520, for violations of Title 18, United States Code 2113(a), bank robbery.

## II. AGENT BACKGROUND AND EXPERIENCE

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since April 2009. I am an "Investigative or Law Enforcement Officer" within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code. My primary duties and responsibilities involve the investigation of violations of federal law including violent crime as found in Title 18 of the United States Code, and the Controlled Substances Act as found in Title 21 of the United States Code. I am currently assigned to the Knoxville Field Office of the FBI and am assigned to the Violent Crime Squad/Safe Streets Task Force. During my tenure as an FBI Special Agent, I have investigated numerous crimes including, but not limited to, bank robbery, carjacking, violent gangs and organized crime, kidnapping, and fugitive investigations. More specifically, I have conducted physical surveillance, executed search warrants, analyzed

1

phone and internet records, and arrested criminal suspects. I have also spoken to confidential human sources, suspects, defendants, witnesses, and other experienced investigators concerning the methods and practices of the criminal element. I have received training and have experience in interviewing and interrogation techniques, arrest procedures, evidence collection, search and seizure, search warrant applications, and various other crimes and investigative techniques. Prior to joining the FBI, I was a State Trooper with the Utah Highway Patrol for approximately nine (9) years, and have over twenty (20) years of experience as a law enforcement officer.

4. Except as noted, all of the information contained in this affidavit is either known to me personally or has been told to me by other law enforcement officials. Because this affidavit is being submitted for the limited purpose of obtaining a criminal complaint, I have set forth only those facts necessary to establish probable cause, and have not included each and every fact known to me in this investigation.

### III. APPLICABLE LAW

5. Title 18 U.S.C. 2113 (a) punishes whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank whose deposits are insured by the Federal Deposit Insurance Corporation ("FDIC").

### IV. PROBABLE CAUSE

6. On or about March 5, 2020, at approximately 9:07 a.m., a lone, white male, hereinafter referred to as "ROBBER", entered Home Federal Bank, located at or near 1700 Downtown West Boulevard, Knoxville, Tennessee. The ROBBER was wearing a red rain poncho with the hood covering his head, disposable gloves, light colored shorts, and white

2

Case 3:20-mj-02073-HBG   Document 1   Filed 03/09/20   Page 3 of 14   PageID #: 36

sneakers. The ROBBER was carrying a manila envelope with his right hand partially inserted into the envelope.

7. The ROBBER approached the teller station, removed his right hand from inside the manila envelope, and displayed the envelope to the teller, whose identity is known to law enforcement. The envelope contained a handwritten note demanding money.

8. The teller removed United States currency from her drawer and placed it inside the manila envelope. The ROBBER took the envelope and exited the bank. As a result of the robbery, Home Federal Bank suffered a loss of approximately $950.00 in United States currency. The deposits of Home Federal Bank were insured by the Federal Deposit Insurance Corporation ("FDIC") at the time of the robbery.

9. Home Federal Bank captured surveillance video of the ROBBER and of the robbery in progress, which I reviewed following the robbery. The ROBBER appeared to be a white male with a large build.

10. On or about March 6, 2020, at approximately 11:17 a.m., a lone, white male entered the First Horizon Bank, located at or near 1815 Downtown West Boulevard, Knoxville, Tennessee. The male was wearing a red rain poncho with the hood covering his head, disposable gloves, light colored shorts, and white sneakers. The male was carrying a manila envelope with his right hand partially inserted into the envelope.

11. The male approached the teller station, removed his right hand from the manila envelope, and displayed the envelope to the teller, whose identity is known to law enforcement. The envelope contained a handwritten note demanding money. The male also verbally instructed the teller to hurry.

12. The teller removed United States currency from a cash dispenser machine and placed it inside the manila envelope. The male took the envelope and exited the bank. As a result of the robbery, First Horizon Bank suffered a loss of approximately $1,000.00 in United States currency. The deposits of First Horizon Bank were insured by the Federal Deposit Insurance Corporation ("FDIC") at the time of the robbery.

13. First Horizon Bank captured surveillance video of the male and of the robbery in progress, which I reviewed following the robbery. The male appeared to be a white male with a large build. The male also appeared to be the same person (ROBBER) who committed the bank robbery at Home Federal Bank, located at or near 1700 Downtown West Boulevard, Knoxville, Tennessee, on or about March 5, 2020, at approximately 9:07 a.m. The ROBBER appeared to be wearing the same or similar clothing in both robberies, and appeared to use the same or similar manila envelope in both robberies.

14. Following the robbery of First Horizon Bank on or about March 6, 2020, a bank employee observed the ROBBER enter the driver's seat of a Buick Enclave SUV, which was parked in the bank parking lot. Bank employees were able to obtain a Virginia license plate number of USY1359 from the vehicle. The Enclave SUV traveled south into the parking lot of a shopping complex, adjacent to the bank.

15. Knoxville Police Department ("KPD") officers responding to the robbery located the BUICK abandoned in a parking stall in the shopping complex parking lot, in the vicinity of 1645 Downtown West Boulevard, Knoxville, Tennessee. KPD officers looked through the windows of the BUICK and observed a clear plastic drink cup containing a clear liquid, with a clear plastic lid, and plastic straw inside the BUICK. KPD officers also observed paper floor

mats, similar to those used by vehicle repair facilities, on the floorboards, and what appeared to be a mechanic style shirt on the back seat of the BUICK.

16. KPD officers observed the BUICK had two (2) different Virginia license plates affixed to the front and back of the BUICK. The Virginia license plate number affixed to the rear of the BUICK was USY1359, and the Virginia license plate number affixed to the front of the BUICK was VFP8659. Vehicle registration inquires were conducted on both license plate numbers. Neither license plate number had been reported stolen. Virginia license plate number USY1359 was the correct plate number assigned to the BUICK and KPD officers confirmed the vehicle identification number ("VIN") matched the registration record. The registered owner of the BUICK was Ryan O'Neal Rice II of Chester, Virginia.

17. Virginia license plate number VFP8659 was assigned to a silver 2010 Chevrolet SUV, and the registered owner was Dana Renea Wilson of Vansant, Virginia.

18. The KPD Forensics Unit processed the exterior of the BUICK for latent fingerprints and secured the vehicle. The BUICK was impounded and transported to the KPD Knoxville Vehicle Impoundment Lot, located at or near 3407 Vice Mayor Jack Sharp Road, Knoxville, Tennessee 37914, where it is currently stored.

19. On or about March 6, 2020, I viewed a Virginia driver license photograph for Ryan O'Neal Rice II, hereinafter referred to as "RICE." RICE was identified as a black male and did not match the description of the ROBBER.

20. On or about March 6, 2020, I viewed a Virginia driver license photograph for Dana Renea Wilson, hereinafter referred to as "WILSON." WILSON was identified as a white female and did not match the description of the ROBBER.

21. On or about March 6, 2020, FBI Task Force Officer ("TFO") Philip F. Johnakin attempted to contact RICE at the address listed on his Virginia driver's license in Chester, Virginia. TFO Johnakin was unable to make contact with anyone at the residence.

22. On or about March 6, 2020, Buchanan County, Virginia Sheriff's Office Deputy M. A. Hatfield made contact with WILSON at the address listed on her Virginia driver's license in Vansant, Virginia. WILSON stated Virginia license plate number VFP8659 had been assigned to her 2010 Chevrolet Traverse, which she no longer owned. WILSON stated the vehicle was repossessed in December of 2019, and was sent to an auction house in Abingdon, Virginia. Wilson did not remove the license plates from the vehicle before it was repossessed.

23. On or about March 6, 2020, investigators from KPD learned that the BUICK had been stolen from the parking lot of an auto repair shop named Mr. Cool Complete Auto Care, located at or near 8062 Kington Pike, Knoxville, Tennessee. Mr. Cool Complete Auto Care was located within close proximity to both the Home Federal Bank and the First Horizon Bank on Downtown West Boulevard.

24. On or about March 7, 2020, FBI TFO Johnakin made contact with a female named Estelle Brown at the address associated with the registered owner of the BUICK in Chester, Virginia. Brown advised TFO Johnakin that the BUICK belonged to her son and was towed to her brother's auto repair shop in Knoxville, Tennessee in October of 2019 to be repaired. Brown provided the name of her brother's auto repair shop as Mr. Cool.

25. On or about March 7, 2020, Knoxville Police Department Investigator Andrew Markham and I interviewed the owner of Mr. Cool Complete Auto Care, James Brown, at the business. Brown stated that the BUICK belonged to his sister and nephew in Virginia, and it had been at his business for several months while he repaired the vehicle's transmission and other

6

parts. Brown stated that he planned to drive the BUICK to his residence after work and his wife, Pamela Brown, had taken the BUICK to be washed. Upon returning to the business, Pamela Brown parked the BUICK in the front parking lot and left the keys inside with the doors unlocked. Brown stated he was unaware that Pamela left the keys inside the BUICK with the doors unlocked, and he decided not to take the BUICK home when he left work that evening. After discovering the BUICK was missing from the parking lot, Brown and Pamela Brown reviewed surveillance video at Mr. Cool Complete Auto Care and observed an unknown white male enter the driver's seat of the BUICK, start the vehicle, and drive away in the BUICK, on March 5, 2020, at approximately 12:08 a.m.

26. Investigator Markham and I reviewed the Mr. Cool Complete Auto Care surveillance video with Pamela Brown at the business. I observed a white male with a large build, wearing a blue baseball hat with white writing and design on the front and brim of the hat, a red polo shirt, light colored shorts that appeared to be the same or similar to those worn by the ROBBER during the robberies of Home Federal Bank and First Horizon Bank, and white sneakers, that also appeared to be the same or similar to the shoes worn by the ROBBER. The video showed the white male wearing what appeared to be disposable gloves while walking through the parking lot of Mr. Cool Complete Auto Care. The video further showed the male attempting to open the driver's door of another vehicle before he opened and entered the driver's door of the BUICK. The male started the BUICK, backed out of the parking stall, and exited the property onto Kingston Pike. Neither Brown nor Pamela Brown recognized the white male. I confirmed the date and time on the video surveillance system was accurate at the time Investigator Markham and I were at the business.

7

27. On or about March 7, 2020, a lone white male entered Fifth Third Bank, located at or near 8331 E. Walker Springs Lane, Knoxville, Tennessee wearing a tan colored jacket with the hood covering his head, a dark brown curly ladies wig under the hood, partially covering his face, blue jeans, and white sneakers. The male approached the teller counter with both hands in the pockets of his jacket. The male removed a manila envelope from his right jacket pocket, unfolded it and provided it to the teller, whose identity is known to law enforcement.

28. The teller observed a handwritten note written on the envelope, demanding money in 50 and 100 dollar denominations. The teller removed United States currency, comprised of 50 dollar bills and 100 dollar bills, from her drawer and placed it inside the envelope. The male took the envelope and exited the bank. The teller was aware of the two (2) aforementioned bank robberies and believed the male to be the same person who committed those robberies. As a result of the robbery, Fifth Third Bank suffered a loss of approximately $5,000.00 in United States currency. The deposits of Fifth Third Bank were insured by the Federal Deposit Insurance Corporation ("FDIC") at the time of the robbery.

29. Fifth Third Bank captured surveillance video of the male and of the robbery in progress, which I reviewed following the robbery. The male appeared to be a white male with a large build, and appeared to be the same person (ROBBER) who robbed the Home Federal Bank on or about March 5, 2020, and the First Horizon Bank on or about March 6, 2020. Based on surveillance video captured by Fifth Third Bank, the tan jacket worn by the ROBBER appeared to be a Dickies brand jacket. Law enforcement conducted an internet search and learned that Dickies brand clothing items are sold at several retail stores, including Walmart.

30. On or about March 7, 2020, following the robbery of Fifth Third Bank, FBI agents and KPD investigators contacted security personnel at a nearby Walmart, located at or

near 8445 Walbrook Drive, Knoxville, Tennessee 37923. FBI agents inquired about recent purchases of red rain ponchos and tan Dickies jackets. Walmart security personnel located a purchase made on March 2, 2020, at approximately 10:15 a.m., which included a poncho, envelopes, markers, and a soda. Walmart security personnel were able to locate surveillance video associated with the purchase. FBI agents reviewed the surveillance video and observed a white male with a large build, wearing white sneakers that appeared to be the same or similar to those worn by the ROBBER. FBI agents observed the male leaving Walmart in what appeared to be a yellow Dodge Challenger.

31. Walmart security personnel advised FBI agents that the male purchased the aforementioned items through a Walmart pay application on his cellular telephone. On or about March 7, 2020, following the service of a Federal Grand Jury Subpoena, Walmart provided transactional data and Walmart pay information associated with the transaction. Based on the information provided by Walmart, the name associated with the transaction was Robert Whipple, with telephone numbers of (225) 363-5100 and (865) 323-7618.

32. Law enforcement located a Tennessee Driver License photograph and record for Robert Z. Whipple III, hereinafter referred to as "WHIPPLE", with a date of birth of January 17, 1973. WHIPPLE was identified as a white male, standing 6'00" tall, weighing 280 pounds. I viewed the Tennessee Driver License photograph and WHIPPLE's face appeared to be similar to visible portions of the ROBBER'S face in bank surveillance videos and photographs I observed from the three (3) aforementioned robberies. WHIPPLE'S physical description was also similar to that of the ROBBER.

33. Law enforcement located a Tennessee vehicle registration for a 2018 yellow Dodge Challenger, bearing Tennessee license plate number CLN097, with a VIN of

2C3CDZAG3JH305320, hereinafter referred to as "DODGE", registered to WHIPPLE at an address in Crossville, Tennessee.

34. KPD Investigator Jason Booker notified me that WHIPPLE was currently on probation and had a criminal history that included theft, auto burglary, and forgery. Investigator Booker also advised me that KPD had conducted a traffic stop of WHIPPLE in the DODGE approximately one (1) month earlier.

35. On or about March 7, 2020, KPD officers observed the DODGE parked in the rear parking lot of the Red Roof Inn hotel, located at or near 1315 Kirby Road, Knoxville, Tennessee. FBI agents and KPD officers responded to the location. I contacted the Red Roof Inn front desk clerk, whose identity is known to law enforcement. I advised the clerk that we were looking for WHIPPLE in connection with three (3) bank robberies and had located his vehicle in the hotel parking lot. I asked the clerk to check the hotel guest registration for WHIPPLE's name. The clerk confirmed that WHIPPLE had checked into the hotel and was staying in room number 354. I requested a key to room number 354 from the clerk, which he provided.

36. I instructed the clerk to attempt to contact WHIPPLE by calling the telephone in his room and request him to come to the front desk regarding an issue with his form of payment. FBI agents and KPD officers stood in the hallway outside of WHIPPLE'S hotel room while the clerk placed the call, at approximately 7:03 p.m. The clerk advised me that he made contact with WHIPPLE in the room, and WHIPPLE stated he would come to the front desk in a few minutes.

37. FBI agents and KPD officers waited in the hallway outside of WHIPPLE's hotel room for approximately 10 minutes and WHIPPLE did not exit the room. Believing that WHIPPLE may be destroying evidence from the bank robberies inside the room, I used the hotel

10

Case 3:20-mj-02073-HBG   Document 1   Filed 03/09/20   Page 11 of 14   PageID #: 44

room key to unlock the door to WHIPPLE's room, and attempted to push the door open and verbally call WHIPPLE out of the room. As I attempted to push the door open, I observed the safety latch was engaged and the door would only open a few inches. At that time, I gave a loud verbal announcement of, "FBI, come to the door." WHIPPLE did not respond verbally and I gave a second loud verbal announcement of, "FBI, come to the door." WHIPPLE did not respond and I heard commotion inside the room. Based on my training and experience, I believed that WHIPPLE was either attempting to destroy evidence from the bank robberies or was arming himself with a weapon.

38. FBI agents forced entry into the room and I observed WHIPPLE bending down along the side of the bed as if he was attempting to retrieve something. I instructed WHIPPLE to show me his hands, which he did. Whipple had a black cellular telephone in his right hand and a smaller object, which I believed to be a vehicle key fob in his left hand. I ordered WHIPPLE to lie face down on the floor and he complied. WHIPPLE was taken into custody without incident at approximately 7:15 p.m. During a search of WHIPPLE's person, incident to arrest, I located approximately $530.00 in United States currency, comprised of 100 dollar bills, 50 dollar bills, 5 dollar bills, and 1 dollar bills in his shirt pocket. While interacting with WHIPPLE, I believed he appeared to be the same person I observed in the Home Federal Bank surveillance video, the First Horizon Bank surveillance video, the Fifth Third Bank surveillance video, the Walmart surveillance video, and the Mr. Cool Complete Auto Care surveillance video.

39. There were two (2) white females in the room with WHIPPLE and FBI agents and KPD officers observed what appeared to be items of drug paraphernalia in plain view inside the hotel room. After being advised of his rights, WHIPPLE invoked his right to an attorney.

11

Case 3:20-mj-02073-HBG Document 1 Filed 03/09/20 Page 12 of 14 PageID #: 45

40. On or about March 7, 2020, at approximately 10:58 p.m., FBI obtained a Search and Seizure Warrant authorized by the United States District Court for the Eastern District of Tennessee for hotel room number 354 at the Red Roof Inn, located at 1315 Kirby Road, Knoxville, Tennessee. FBI agents executed the Search and Seizure Warrant at approximately 10:58 p.m. on March 7, 2020.

41. Pursuant to the Search and Seizure Warrant, FBI agents located and collected several items of evidence, including blue jeans similar to those worn by the ROBBER during the March 7, 2020 robbery of Fifth Third Bank. FBI agents located and collected $3,500.00 in United States currency, comprised of 50 dollar bills and 100 dollar bills, inside the left front pocket of the jeans. FBI agents also located and collected light colored shorts that appeared to be the same or similar to the shorts worn by the ROBBER during the March 5 and March 6, 2020 robberies of Home Federal Bank and First Horizon Bank, as well as the shorts worn by the white male who stole the BUICK from Mr. Cool Complete Auto Care. Additionally, FBI agents located and collected white New Balance sneakers that appeared to be the same or similar to the shoes worn by the ROBBER in all three (3) bank robberies and by the white male who stole the BUICK from Mr. Cool Complete Auto Care. Further, FBI agents located and collected a blue baseball hat with white writing on the front and a white design on the brim, along with a red polo shirt that appeared to be the same or similar to the hat and shirt worn by the white male who stole the BUICK from Mr. Cool Complete Auto Care on March 5, 2020.

42. Based on the foregoing, there is probable cause to believe that Robert Z. Whipple III violated Title 18, United States Code, Section 2113(a), bank robbery.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Wesley P. Leatham
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
this the 9th day of March, 2020.

_____
HON. H. BRUCE GUYTON
UNITED STATES MAGISTRATE JUDGE